UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TASHEEM GOLDSTON,

                                        Petitioner,

        v.

                                                        9:16-CV-1191
ELIZABETH O'MEARA,                                      (BKS)
                                Respondent.
_____

APPEARANCES:

TASHEEM GOLDSTON                        OF COUNSEL:
11-A-3422
Petitioner, pro se
Mohawk Correctional Facility
P.O. Box 8451
Rome, NY 13440

HON. ERIC T. SCHNEIDERMAN              HANNAH S. LONG, AAG
Attorney for Respondent
Office of the Attorney General
120 Broadway
New York, New York 10271

BRENDA K. SANNES
United States District Judge

## DECISION AND ORDER

## I.      INTRODUCTION

        Petitioner Tasheem Goldston filed a petition for a writ of habeas corpus, a supporting

memorandum of law and exhibits pursuant to 28 U.S.C. § 2254.  Dkt. No. 1, Petition ("Pet.")

at 1-6; Dkt. No. 1-1, Memorandum of Law; Dkt. No. 1-2, Exhibits.  He argues: (1) two of his

attorneys were ineffective; (2) he was denied the right to confront an identification witness at

a suppression hearing; and (3) the "People and the police used fraud and duress to secure"

his conviction.  Dkt. No. 1 at 5-10; Dkt. No. 1-1 at 2-14.  Respondent opposes the petition.

Dkt. No. 17, Answer; Dkt. No. 17-1, State Court Record ("SCR"); Dkt. No. 17-2, Transcripts

("TR"); Dkt. No. 17-3, Respondent's Memorandum of Law in Opposition to the Petition for a

Writ of Habeas Corpus. Petitioner filed a reply with exhibits. Dkt. No. 20, Reply.[1]

For the reasons that follow, the petition is denied and dismissed.

## II.    RELEVANT BACKGROUND

### A.    The Charges

In July 2011, an Albany County grand jury returned an indictment charging petitioner

with ten different crimes occurring on two different dates. The first eight counts of the

indictment stemmed from petitioner's alleged involvement in the armed attempted robbery

and shooting of Rashim Mayo on June 18, 2010. Dkt. No. 17-1 at SCR 48-55. Mayo told

police he was shot by "Sheemstone" or "Sheem Stony," and on June 22, 2010, he identified

petitioner as the shooter from a photo array. For that incident, petitioner was charged with

first degree assault (N.Y. Penal Law §120.10(1)), two counts of second degree criminal

possession of a weapon (N.Y. Penal Law §§265.03(1)(b) and (3)), third degree criminal

possession of a weapon (N.Y. Penal Law §265.02(1)), three counts of first degree attempted

robbery (N.Y. Penal Law §§110.00/160.15(1), (2), and (4)), and second degree attempted

robbery (N.Y. Penal Law §§110.00/160.10(1)). *See id.* at SCR 48-55.

Petitioner was charged in the same indictment with additional counts of second and

third degree criminal possession of a weapon (N.Y. Penal Law §§265.03(3), 265.02(1)).

Dkt. No. 17-1 at SCR 56-57. Those charges stemmed from petitioner's possession of a

---

[1] On May 18, 2017, respondent's counsel filed a letter in which she states that petitioner's reply includes "an affidavit alleging new facts in support of" petitioner's "ineffective counsel claim" that counsel appears to allege were not presented to the state courts. Dkt. No. 21; *see* Dkt. No. 20 at 19. To the extent the affidavit is consistent with petitioner's petition, or is offered in reply to respondent's claims, it will be considered.

loaded Lorcin Model L32 pistol, found on his person when he was arrested on July 21, 2010 in connection with the June 18, 2010 incident.  *See id.*

## B.    State Court Proceedings

Petitioner was arraigned on the indictment on August 2, 2010.  Dkt. No. 17-2 at TR 1-7.  On August 25, 2010, he appeared in court with Assistant Alternate Public Defender Andrew Purrott.  *Id.* at TR 8-9.  Petitioner rejected a plea offer that would have required him to plead guilty to second degree criminal possession of a weapon in exchange for a determinate sentence not to exceed 13 years in prison, followed by 5 years post-release supervision.  *Id.* at TR 9.  Purrott told the court he spoke with petitioner "numerous times at the jail" and told him that he faced a consecutive sentences on the two sets of charges.  *Id.* He also told the court he and petitioner had a "very harmonious relationship up to this point." *Id.* at TR 10.  Petitioner confirmed that he did not want to plead guilty, and understood he faced lengthy, and possibly consecutive, sentences.  *Id.* at TR 11-12.

In papers dated October 8, 2010, Purrott filed an omnibus motion that included, as relevant here, motions to suppress Mayo's identification testimony, petitioner's statements about the gun on the day of his arrest, and the gun itself on the ground that police lacked probable cause to arrest him.  Dkt. No. 17-1 at SCR 66-69, 71-72, 80-83.  Purrott also moved to sever the July 21 gun charges from the indictment.  *Id.* at SCR 67, 83-84.  The People opposed the motions, but consented to hearings on the admissibility of the challenged evidence.  *Id.* at SCR 100-107.  In a Decision and Order dated November 30, 2010, the trial court denied petitioner's motion to sever, but granted hearings on the suppression motions. *Id.* at SCR 109-10.

On December 21, 2010, petitioner appeared in court with new counsel, Alternate Public Defender Thomas Dulin, for a hearing on the motions. Dkt. No. 17-2 at TR 15. The People made a revised plea offer. Under its terms, petitioner would have to plead guilty to second degree criminal possession of a weapon in exchange for a sentence of 10 years in prison followed by 5 years post-release supervision. Petitioner would be a "second felony offender, there would be an Order of Protection, Waiver of Right to Appeal, and any restitution, if any," and the sentence would run consecutively to any time petitioner owed "to the State on parole[.]" *Id.* at SCR 19. Dulin told the court the offer was conveyed, and while he did not mention restitution, counsel did not think that condition was "a deal breaker one way or the other." *Id.* Dulin also told the court that when he last spoke with petitioner, petitioner was not "interested in a plea right at this moment," and that petitioner wanted to address the court directly. *Id.* at SCR 19-20.

Petitioner told the court he was "for the most part" represented by Purrott and saw him "about three times, for an approximate time of about 40 minutes, for the whole five months I have been locked up for." Dkt. No. 17-2 at TR 20-21. He explained "they came" to see him the previous Saturday, and "he told me that they didn't think it would be wise" if petitioner went to trial. *Id.* at TR 21. He claimed he gave Purrott names of witnesses and "various defenses" that were not pursued, and Purrott did not seem familiar with the paperwork and facts of the case. *Id.* at SCR 21-22. Petitioner further stated that his counsel told him the suppression motions would fail, and petitioner disagreed because he "read the law," could understand it, and believed he could win, but was not "comfortable with their representation." *Id.* at SCR 22. Petitioner questioned the content and quality of the omnibus motions, and

4

told the court he did not think counsel had time to represent him. *Id.* at SCR 23-24.

The court asked Dulin if he was ready to proceed on the suppression motion, and Dulin answered that he was "reasonably prepared," but there was "a witness mentioned" during the previous meeting with petitioner and an investigator was trying to subpoena that witness. Dkt. No. 17-2 at TR 24. Dulin was able to review "some additional documents," but stated there appeared to be some information about "some of the witnesses who observed some of the events" that was not yet turned over. *Id.* at TR 24-25. Dulin explained that the content of the witness statements was disclosed, but their names were redacted from the records, which made it "a lot more difficult for us to prepare." *Id.* at TR 25. Dulin characterized the omission of the names as a *Brady*[2] violation, asserted that if he could have interviewed the witnesses, he would have a "better understanding of what could be proven," and claimed his preparation was "hampered." *Id.* Dulin then assured the court he was "reasonably prepared as best as possible to this point." *Id.*

The court denied petitioner's request for new counsel, confirmed that petitioner rejected the People's revised plea offer, and the suppression hearing began. Dkt. No. 17-2 at TR 28. The People called as witnesses Detective Timothy Haggerty and police officers Robert Mulligan and John Regan. *Id.* at TR 28-114. When the People rested, Dulin requested a continuance, explaining that his investigator was trying to serve a subpoena on a witness counsel "just learned" about. *Id.* at TR 115-16. The court adjourned the hearing until the next day to allow Dulin's investigator time to secure the witness. *Id.* at TR 118.

The suppression hearing continued on December 22, 2010. Dkt. No. 17-2 at TR 121.

_____

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

Dulin identified the witness he was attempting to subpoena as Mayo, and explained that Mayo was not present in court. *Id.* at TR 125. The investigator left a subpoena at Mayo's home, and when she returned later that day, the subpoena "had been removed." *Id.* at TR 124. The investigator spoke with Mayo's neighbors, who stated Mayo's car was parked in front of the residence and confirmed he lived in the building. *Id.* When the investigator "attempted to get a response at the door, she was told in no uncertain terms to stop ringing the doorbell," and no one answered the door. *Id.* at TR 124-25. According to Dulin, petitioner told him that Mayo would "contradict what the police officers had to say, with respect to reasonable cause and with respect to the identification procedures itself." *Id.* at TR 125. Specifically, Dulin expected Mayo to say he did not identify petitioner as the shooter, and did not "voluntarily pick out any particular photographs that were provided to him in a photo array. *Id.* at TR 126. Dulin argued that if Mayo so testified, "that would place in jeopardy whether or not the police had reasonable cause to approach and accost" petitioner on the day he was arrested. *Id.* at TR 126.

The prosecutor opposed any further continuance in order for Dulin to produce Mayo, arguing that "it's a fishing expedition and it is not a discovery mechanism and it's just a means to harass the victim." Dkt. No. 17-2 at TR 127. He further stated he had no "belief at this time that Mr. Mayo will say, anything contradicting the People's case." *Id.* The prosecutor confirmed he had not heard from Mayo on either December 21 or 22, 2010. *Id.*

After a brief recess, the trial court asked Dulin to explain his basis for believing Mayo would contradict the People's case. Dkt. No. 17-2 at TR 127-29. Dulin conferred with petitioner, and told the court "at least two of [petitioner's] relatives and several other people

with whom he's acquainted have had conversations with ... Mayo," and Mayo "was purported to have told each of these people, that he did not identify any photographs, that he did not sign any documents for the police, that he did not identify to the police [petitioner] as being the person who shot him[.]"  *Id.* at TR 129.  Dulin repeated his argument that if Mayo so testified, police lacked reasonable cause to stop petitioner.  *Id.* at TR 129-30.

The court denied Dulin's request for an adjournment to secure Mayo's testimony pursuant to *People v. Chipp*, 75 N.Y.2d 327 (1990).[3]  Dkt. No. 17-2 at TR 130-33.  The court ruled that petitioner did not claim the photo array identification procedure "was suggestive, unconstitutionally suggestive," and concluded the photo array was "fair."  *Id.* at TR 132.  Instead, petitioner claimed Mayo was "flat out lying" about his identification of petitioner.  *Id.* at TR 132.  The court concluded that Mayo "testified before the Grand Jury," and it was "very highly unlikely" that Mayo would now testify the identification "never happened" and "was concocted."  *Id.* at TR 132-33.  The court also opined that the "other possible purpose" of calling Mayo, a "misguided attempt[] at discovery and harassing the witness ... are still paramount in this case[.]"  *Id.* at TR 133.

Petitioner then asked the court for permission to proceed pro se.  Dkt. No. 17-2 at TR

---

[3]  In *Chipp*, the New York Court of Appeals ruled that the trial court did not abuse its discretion in denying defendant's request to call a complaining witness at a suppression hearing because

> no indicia of suggestiveness was presented to the hearing court, nor indeed even at trial. Defendant's primary contention was that the complainant might offer testimony that the varied complexions of the subjects of the lineup rendered the procedure unduly suggestive. As the court already had a photograph of the lineup before it, the complainant's testimony on this point could only have been cumulative and it was therefore within the discretion of the hearing Judge to exclude it. Defendant's additional contentions that the complainant might have revealed that something improper was said to her during the procedure are, on the record before the hearing Judge, purely speculative. Thus, in the circumstances of this case, the court did not abuse its discretion in denying defendant's request to call the complainant at the *Wade* hearing.

*Chipp*, 75 N.Y.2d at 339.

134-42.  The court reserved decision on that request and on the suppression motions.  *Id.* at TR 142-43.

On February 2, 2011, while petitioner's request to proceed pro se was pending, the trial court issued a decision denying the suppression motion.  Dkt. No. 17-1 at SCR 112-23.  The court concluded that Haggerty, Mulligan and Regan "each appeared frank, candid, and trustworthy, and their testimony had the general force and flavor of credibility."  *Id.* at SCR 115-16.  The trial court made the following findings of fact:

> On June 18, 2010 at approximately 11:00 p.m., Det. Haggerty responded to a shooting incident near ... Sloan Street in the City of Albany.  The victim, Rashim Mayo ("Mayo"), was transported to the hospital.  On June 19, 2010, Det. Haggerty went to speak to Mayo at the hospital.  Mayo described the shooter as a short, stocky black male wearing a black hooded sweatshirt and a red bandana.  Mayo also told Det. Haggerty that he knew the defendant as "Sheem Stone" from meeting him at a parole office and that the defendant's brother drives a Subaru station wagon with a "Superman" sticker on it.

> Based upon that information, the police created a photo array containing the defendant's photo (People's Exhibit #1).  On June 22, 2010 at approximately 5:55 p.m., Det. Haggerty returned to the hospital to show Mayo the photo array.  Det. Haggerty told Mayo that he had a photo array with six photos on it; that the person who shot him may or may not be in the photo array; and that if Mayo recognized anyone to let him know where he recognized that individual from.  Mayo identified photo #5 and wrote: "This is shooter."  Mayo then completed and signed a written statement regarding the photo array (People's Exhibit #2).  This Court finds that the different incident numbers on the photo array, the photo array affidavit, and other police documents are **not** significant factors regarding Mayo's photographic identification of the defendant.

> On July 21, 2010 at approximately 6:00 p.m., Det. Haggerty and Det. Cornell observed the defendant in the area of 118 Second Avenue in the City of Albany.  Det. Haggerty turned his car around, came back to that area, and stopped his vehicle.  Det. Haggerty then approached the defendant and asked him his name.  The defendant identified himself, and he was asked to step away from other individuals in that area.  Det. Haggerty asked the defendant to come to the police station to speak to the police.  Initially, the defendant agreed but then asked to go and get a shirt.  When Det. Haggerty told the defendant that would not be necessary, the defendant ran.  The detectives gave chase and called out for additional units.

The defendant was apprehended at gunpoint in the backyard of 118 Second Avenue. The defendant was directed to get down on the ground - where Det. Cornell handcuffed him. Officer Regan arrived in the area, and the defendant yelled to Officer Regan: "I got something important to tell you." At first Officer Regan ignored the defendant, but then said: "Ok, what do you want to tell me?" Defendant stated that he had a gun in his front pocket. Officer Regan then rolled the defendant over and removed a loaded .32 caliber handgun from the defendant's pocket. A red bandana was also seized from the defendant.

Officer Mulligan transported the defendant from 118 Second Avenue to the Albany police station. As Officer Mulligan was walking the defendant into the police station, the defendant stated: "I'm sorry I had to do what I had to do, I had a gun on me." Officer Mulligan did not ask the defendant any questions or have any conversation with him prior to the defendant making such statement.

On July 21, 2010 at approximately 6:50 p.m., Det. Haggerty and Det. Cornell interviewed the defendant in Interview Room #5 at the police station. Det. Cornell advised the defendant of his Miranda rights from a pre-printed form (People's Exhibit #3). When asked if he understood his rights, the defendant stated that he understood his rights. When asked if he would be willing to answer some questions, the defendant stated: "Yes, certain ones." The defendant then proceeded to answer the detectives' questions.

Dkt. No. 17-1, SCR 116-18; *see* Dkt. No. 17-2 at TR 28-114. The court denied petitioner's motion to suppress "the prospective identification testimony of Mayo on the basis of undue suggestiveness" because the "photographic identification procedure conducted by Det. Haggerty with Mayo was fundamentally fair and without any suggestiveness whatsoever." Dkt. No. 17-1 at SCR 118. The court also denied petitioner's motion to suppress his statements as "fruits of an unlawful arrest" because police had probable cause to arrest petitioner based on Mayo's identification of petitioner as the shooter. *Id.* at SCR 119. The court further ruled that petitioner's oral statements to Officers Regan and Mulligan were spontaneous and not the product of interrogation, and that even if the statement to Officer Regan was not spontaneous, Officer Regan's question to petitioner "did not constitute a process of interrogation to which Miranda is applicable." *Id.* at SCR 120-21. Petitioner's oral

9

statements to Detective Haggerty were admissible because they were "knowingly, freely and voluntarily made within the meaning and intent of CPL §60.45." *Id.* at SCR 121. Finally, the court denied petitioner's motion to suppress physical evidence because "the seizure of the loaded .32 caliber handgun and a red bandana from the defendant's person was lawful pursuant to a search and seizure incident to a lawful arrest." *Id.* at SCR 121.

On February 8, 2011, petitioner appeared in court with attorney Dulin. Dkt. No. 17-2, TR 146. The court explained to petitioner that if he pleaded guilty to second degree criminal possession of a weapon, the People would recommend a sentence of 10 years in prison followed by 5 years post-release supervision based on petitioner's status as a second violent felony offender. *Id.* at TR 147-48. Petitioner told the court he believed the offer was "so high" because it was "attached to the shooting incident," and the court agreed. *Id.* at TR 148. Petitioner told the court he thought he could "beat" the shooting charges, but not the gun possession charge, and objected that the sets of charges had not been severed. *Id.* at TR 151. Petitioner told the court he wanted to represent himself and, after a lengthy colloquy, the court granted his request. *Id.* at TR 156-75. The court appointed Dulin as stand-by counsel. *Id.* at TR 175-76.

On February 10, 2011, the parties appeared in court to address pre-trial matters. Dkt. No. 17-2 at TR 178-91. Petitioner pointed out that the defense never rested at the suppression hearing, and he wanted to testify. *Id.* at TR 192-93. Petitioner moved to re-open the suppression hearing, and the court granted his request. *Id.* at TR 196. Petitioner testified regarding his recollection of the events surrounding his arrest on July 21, 2010, including his statements to police and the seizure of the gun. *Id.* at TR 198-214. Petitioner

then rested, and the court stated it would issue an amended decision on the suppression motion. *Id.* at TR 214-15.

In a supplemental decision dated February 10, 2011, the court ruled that petitioner was an "interested witness, and his testimony appeared colored by his interest in the outcome of the hearing." Dkt. No. 17-1 at SCR 149. The court further noted that petitioner had two prior felony convictions (second degree robbery and first degree possession of prison contraband) that "reflect[ed] adversely upon his credibility as a witness." *Id.* The court ruled that it did "<u>not</u> find" petitioner's "testimony truthful and/or accurate." *Id.* at SCR 149 (emphasis in original). The court found the same facts as those recited in its earlier decision, and again denied petitioner's suppression motions. *Id.* at SCR 149-50.

On February 14, 2011, petitioner's trial began and a jury was selected. Dkt. No. 17-2 at TR 217-486. The next day, attorney Robert A. Becher told the court he was retained to represent petitioner, and moved for a mistrial in order to prepare. *Id.* at TR 488-90. Petitioner told the court he wanted Becher to represent him, and consented to excusing Dulin. *Id.* at TR 489-90. After lengthy discussions, and after learning that some of the selected jurors would be unavailable if the trial was delayed, the court granted Becher's request for a mistrial. *Id.* at TR 490-510.

Before the new trial began, Becher again moved to sever the counts of the indictment related to the shooting (Counts One through Eight) from the gun charges (Counts Nine and Ten). On March 15, 2011, the court granted the motion, finding that petitioner "made a convincing showing that he has both important testimony to give concerning one set of offenses (Counts One through Eight) and a strong need to refrain from testifying as to the

11

other two charges (Counts Nine and Ten)." Dkt. No. 17-1 at SCR 158. The court ordered the trial on the gun charges to proceed first. *Id.* at SCR 158-59.

Petitioner's jury trial on Counts Nine and Ten was held from May 2 to May 4, 2011. Dkt. No. 17-2 at TR 523-1023. Petitioner was convicted of both counts. *Id.* at TR 1022-23. Mayo's identification of petitioner as the shooter, and any information about the shooting itself, was not admitted at trial because the court denied the prosecutor's request to present evidence about the events that led to petitioner's June 21, 2010 arrest. *Id.* at TR 174-77, 517, 526-27, 705-710. The court adjourned sentencing until after the trial on the shooting-related charges concluded. *See id.* at TR 1050-51.

Petitioner's jury trial on the shooting-related charges took place from July 5 through July 8, 2011. Dkt. No. 17-2 at TR 1244-1692. The trial court did not permit the prosecutor to present Mayo's photo array identification, but permitted him to question Mayo regarding his recognition of the shooter and to elicit an in-court identification. *Id.* at TR 1322, 1434-35. Mayo testified that the shooter wore a black hooded sweatshirt with a red bandana over his face. *Id.* at TR 1320-21. He testified he did not recognize the shooter at the time of the shooting, but he thought the shooter bore a "striking resemblance" to someone. *Id.* at TR 1322. He could not identify petitioner as the shooter in court, and testified he was "not exactly sure" if petitioner was one of the two people involved in the shooting. *Id.* at TR 1322-23.

The court took a brief recess before Becher cross-examined Mayo. Dkt. No. 17-2 at TR 1333. The prosecutor told the court Mayo did not testify consistently with his grand jury testimony, and he wanted to use that testimony to further question Mayo. *Id.* at 1333-34.

The court noted that Mayo did not testify petitioner was not the shooter, just that he was not "a hundred percent sure." *Id.* at TR 1334. The court told Mayo that if he "testified at odds with [his] grand jury testimony," he was subject to "possibly being charged with statutory perjury," and it did not matter "which one is true and which one is false if they [were] inconsistent with each other." *Id.* The court appointed counsel to represent Mayo and excused him, subject to his being recalled as a witness. *Id.* at TR. 1336-42. After conferring with counsel, Mayo returned to the witness stand and identified petitioner as the shooter. *Id.* at TR 1386-91, 1424-36; 1436-37. On cross-examination, Becher extensively questioned Mayo on his ability to observe and identify the shooter. *See id.* at TR 1438-64. On July 8, 2011, the jury acquitted petitioner of all counts. Dkt. No. 17-2 at TR 1688-92.

On July 26, 2011, petitioner was sentenced, as a second violent felony offender, to an aggregate term of 10½ years in prison followed by 5 years post-release supervision for Counts Nine and Ten. Dkt. No. 17-2 at TR 1705-25.

Petitioner appealed, and appellate counsel filed a brief in which he raised nine grounds for relief. Dkt. No. 17-2 at SCR 248-335; SCR 336-1007. As relevant here, counsel argued that Dulin was ineffective at the suppression hearing and the trial court erred when it denied petitioner's request to have Mayo testify at the suppression hearing. *Id.* at SCR 299-308, 315-17. The People opposed the appeal. *Id.* at SCR 1008-44, 1045-55. Petitioner filed a reply. *Id.* at SCR 1056-71.

On March 19, 2015, the Appellate Division affirmed. *People v. Goldston*, 126 A.D.3d 1175 (3d Dep't. 2015). The New York Court of Appeals denied leave to appeal further on July 6, 2015, and denied petitioner's request for reconsideration on December 3, 2015. Dkt.

No. 17-1 at SCR 1079-1119; *Goldston*, 25 N.Y.3d 1201 (2015), *recon. denied* 26 N.Y.3d 1088 (2015).

On or about February 5, 2016, petitioner filed a motion to vacate his conviction pursuant to CPL §440.10. Dkt. No. 17-1 at SCR 1128-55. He argued attorneys Purrott and Dulin were ineffective because they failed to "properly investigate" the case, and attorney Dulin was ineffective because he did not properly represent petitioner at the suppression hearing. *Id.* at SCR 1128, 1130-33. He claimed Dulin had "exculpatory evidence" that proved he was in a store on Second Avenue in Albany when Mayo was shot, and attached surveillance camera photographs to his motion. *See id.* at SCR 1133-34, 1142-46. He argued the photographs negated probable cause, and Dulin was ineffective for not using them during the suppression hearing. *Id.* He also argued Dulin did not properly cross-examine Detective Haggerty about the lighting conditions in the area where Mayo was shot. *Id.* at SCR 1134-35. He also argued his attorneys were ineffective for failing to investigate alibi witnesses and failing to investigate Mayo's photo array identification on the ground it was "doctored and forged in order to manufacture probable cause" for petitioner's arrest. *Id.* at SCR 1135. Petitioner asserted counsel should have hired a "forensic handwriting expert" to compare the signature on the array with Mayor's signature in his medical records. *Id.* at SCR 1136.

Petitioner also argued that his right to due process was violated because he was not permitted to question Mayo at the suppression hearing, and his conviction was "secured through duress and through coercing" Mayo to "go along with a particular story." Dkt. No. 17-1 at SCR 1129, 1131, 1136-41.

The People opposed the motion. Dkt. No. 17-1 at SCR 1156-62. On April 27, 2016, the trial court denied petitioner's motion. Dkt. No. 17-1 at SCR 1196-98. On July 11, 2016, the Appellate Division denied petitioner's motion to extend the time to move for leave to appeal from the trial court's decision. Dkt. No. 17-1 at SCR 1202.

This action followed.

## III.    DISCUSSION

### A.    Ground One - Ineffective Assistance of Trial Counsel

Petitioner claims in Ground One of his petition that attorneys Purrott and Dulin were ineffective because they failed to investigate "photographic evidence (still photographs)" taken of petitioner at a store "that proved [petitioner] was somewhere else" when Mayo was shot. Pet. at 5; Dkt. No. 1-1 at 6-7. Petitioner argues that the police had the photographs and therefore knew he was not at the scene of the shooting and they lacked probable cause to arrest him later. He complains that Purrott and Dulin failed to investigate "where the photos came from," and Dulin failed to use the photographs at the suppression hearing to prove that the police did not have probable cause to arrest him. Pet. at 5; Dkt. No. 1-1 at 6-7.

Petitioner raised his ineffective assistance claims in his CPL §440.10 motion. Dkt. No. 17-1 at SCR 1133-35, 1142-46. The county court rejected them pursuant to CPL §§440.10(2)(b) because the claims were "either raised or could have been raised on direct appeal" and were therefore barred from review. Dkt. No. 17-1 at SCR 1197. The court also rejected petitioner's claims in the alternative on the merits, finding that there was "no proof whatsoever that but for defense counsel's actions, the result of the trial would have been any different." *Id.* at SCR 1197.

15

Respondent argues that petitioner's ineffective assistance claims are procedurally defaulted based upon the trial court's reliance on an adequate and independent state ground to dismiss them and are, in any event, meritless. R. Mem. at 17-20. Petitioner argues that the trial court's application of CPL §440.10(2)(b) was exorbitant and should not bar federal review of his claims. Dkt. No. 1-1 at 6-7; Dkt. No. 20 at 3-4.

Substantive review of a habeas claim is prohibited if the state court rested its decision on "'a state-law ground that is independent of the federal question and adequate to support the judgment." *Walker v. Martin,* 562 U.S. 307, 315 (2011) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). To qualify as an "adequate" ground, the state rule must be "firmly established and regularly followed." *Id.* at 316 (quotation marks and citation omitted); *Downs v. Lape,* 657 F.3d 97, 101 (2d Cir. 2011) (explaining that habeas review of a state court's application of its own rules is deferential and is focused on whether the challenged ruling "falls within the state's usual practice and is justified by legitimate state interests, not whether the state court ruling was correct."). A rule can be firmly established and regularly followed "even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard v. Kindler*, 558 U.S. 53, 61 (2009); *see Downs*, 657 F.3d at 103 ("we expect some variation is inevitable in the application of any procedural rule. Such variation just as easily reflects at least the proper exercise of appellate court discretion as it does the lack of a firmly established and regularly followed rule."). Even if the state court proceeds to consider the merits of an unpreserved claim, its reliance on a procedural ground as one basis for the denial of the claim precludes habeas review. *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an

*alternate* holding" because "the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.") (emphasis in original); *Fulton v. Graham*, 802 F.3d 257, 265 (2d Cir. Sept. 11, 2015) (state court's discussion of ineffective assistance claim, introduced by noting that "*if this court were to consider* the defendant's claim of ineffective assistance of counsel, the motion *would* similarly be denied" signaled that the court "was *not* basing its judgment on the merits of the federal claim, but rather on a state procedural bar.") (emphasis in original).

In this case, the trial court cited to CPL §440.10(2)(b), which provides that a motion to vacate a conviction must be denied when the "judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such appeal[.]" But because petitioner's direct appeal was no longer pending at the time of his CPL §440.10 motion, subsection 2(b) did not apply to his motion. Instead, subsection (2)(c), "which applies to cases in which the direct appeal has been exhausted, was the applicable section." *Hardison v. Artus*, No. 1:06-CV-0322, 2006 WL 1330064 at *5 n.5 (S.D.N.Y. May. 15, 2006); *see* CPL §440.10(2)(c) (providing that a court must deny a §440.10 motion when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure ... to raise such ground or issue upon an appeal actually perfected by him [ .]"). The difference is immaterial because both CPL §§440.10(2)(b) and

17

(c) require record-based claims to be raised on direct appeal, with the only difference being "the status of the direct appeal at the time the claim is before the §440 court." *Hardison*, 2006 WL 1330064 at *5 n.5.

CPL §§440.10(2)(b) and (2)(c) are firmly established and regularly followed state court rules and ordinarily, when these rules are expressly invoked by a state court to reject a claim, federal habeas review is barred. *See Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (finding "district court erred in holding that the state court's application of section 440.10(2)(c) did not constitute an adequate state procedural bar to [petitioner's] federal habeas petition"); *Murden v. Artuz*, 497 F.3d 178, 191-93 (2d Cir. 2007) (finding "C.P.L. § 440.10(2)(c) constitutes an adequate state procedural bar to federal habeas review."); *Holland v. Irvin*, 45 F. App'x. 17, 20-21 (2d Cir. 2002) (CPL §440.10(2)(b) constituted adequate and independent state court ground to deny ineffective assistance of counsel claim, and habeas review was therefore barred); *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 359-60 (N.D.N.Y. 2013) (discussing CPL §440.10(2)(b)).

In "exceptional cases," however, "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002); *see Garvey v. Duncan*, 485 F.3d 709, 713-714 (2d Cir. 2006); *Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003). In determining whether the application of an independent state rule was "exorbitant," courts should consider: (1) whether the alleged procedural violation was actually relied upon by the trial court and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law required compliance with the rule in the specific circumstances; and (3) whether petitioner had "substantially complied" with the rule given the "realities of trial,"

and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Garvey*, 485 F.3d at 714 (quoting *Cotto*, 331 F.3d at 240). The *Cotto* factors are not all determinative, but are a guide to evaluate the state's interest in a particular rule in the circumstances of a particular case. *Id.* at 714. The Second Circuit has ruled that when "assessing the contours of a state court's denial of collateral review because of a petitioner's failure to raise an issue on direct appeal," the focus of the inquiry is on the "second of the *Cotto* guideposts." *Pierotti v. Walsh*, 834 F.3d 171, 177 (2d Cir. 2016) (quoting *Fulton*, 802 F.3d at 262-63).

Petitioner argues his ineffective assistance claim is "mixed" because "some of the issues appeared on the record and some did not," and his claims were therefore more properly raised in a CPL §440.10 motion. Dkt. No. 20 at 3-4 (citing *Pierotti*, 834 F.3d at 178). He states "there is nothing mentioned about the photos by any of" his lawyers on the face of the record, and the first "actual mention of" the photographs "is in the appeal record." *Id.* at 3-4. He claims that Dulin had the photographs "because when the petitioner went pro-se the photographs were in the file." *Id.* at 4. Petitioner further states that although Purrott, Dulin and Becher all received discovery materials, [n]othing about the letters states anything about photographs and where they came from and there is nothing about the photographs anywhere in the record." *Id.* He appears to argue that he raised his claims in the CPL §440.10 motion because the Appellate Division ruled that failure to investigate claims were "properly the subject of a CPL article 440 motion." Dkt. No. 20 at 1 (quoting *Goldston*, 126 A.D.3d at 1176).

This Court agrees with petitioner that his ineffective assistance claim appears to be based on some facts appearing on the record and some that are outside the record. *See*

19

*Pierotti*, 834 F.3d at 179. For example, the record is clear that Dulin did not use the photographs at the suppression hearing (nor did petitioner use them when the hearing was re-opened a few months later), and the photographs were turned over to attorney Becher on May 2, 2011, well after the December 2010 suppression hearing. Dkt. No. 17-1 at SCR 218, 241-46; Dkt. No. 17-2 at TR 15-133; 196-214. The record also provided the factual basis for petitioner's claim that the police had the photographs when he was arrested. Dkt. No. 17-2 at TR 63. But it is not clear that either Purrott or Dulin had the photographs before the suppression hearing began and, if they did, whether any investigation was conducted regarding the photographs. Although petitioner insists that Dulin had the photographs at the time of the suppression hearing because they were in the file Dulin gave him when petitioner was granted permission to proceed pro se, that information does not appear on the face of the record. Dkt. No. 20 at 4. Dkt. No. 17-2 at TR 15-133.

Under these circumstances, it appears that petitioner's ineffective assistance claims were properly brought in the CPL §440.10 motion, rather than on direct appeal. *Pierotti*, 834 F.3d at 179 (collecting New York cases); *see People v. Peque*, 22 N.Y.3d 168, 202 (2013) ("Where a defendant's complaint about counsel is predicated on factors such as counsel's advice or preparation that do not appear on the face of the record, the defendant must raise his or her claim via a 440.10 motion."); *People v. Johnson*, 81 A.D.3d 1428, 1428 (4th Dep't. 2011) ("Several of the alleged instances of ineffective assistance specified by defendant, e.g., that she was not properly advised of the pretrial plea offer and that her attorney did not conduct a proper investigation, are based on matters outside the record on appeal and thus must be raised by way of a motion pursuant to CPL article 440."); *People v. Maxwell*, 89 A.D.3d 1108, 1109 (2d Dep't. 2011) (where "a defendant presents a mixed claim of

20

ineffective assistance that depends, in part, upon matters that do not appear on the record, it cannot be said that 'sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal' (CPL 440.10[2][b]). Therefore, such a mixed claim, presented in a CPL 440.10 motion, is not procedurally barred, and the CPL 440.10 proceeding is the appropriate forum for reviewing the claim of ineffectiveness in its entirety.") (citations omitted).  The Court therefore finds that petitioner's claim is not procedurally barred by an adequate and independent state court ground and will not dismiss the claim on that basis.

The trial court ruled in the alternative that, "[a]dditionally, ... the two-prong test for ineffective assistance of counsel established by Strickland v. Washington, 466 US 668 [1984]" was not met because petitioner failed to satisfy the prejudice prong.  Dkt. No. 17-1 at SCR 1197.  The wording of the court's opinion reflects that it was based not only on the procedural default, but also on the merits of the claim.  The alternative decision therefore constitutes a decision on the merits for purposes of 28 U.S.C. § 2254(d).  *See Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015) (state court decision treated as one issued on the merits where the court initially "decline[d] to reach the merits" of an ineffective assistance of counsel claim, but the "very next sentence described Smith's claim as 'procedurally barred and meritless,'" and the rest of the decision "clearly and in considerable detail addressed the merits of Smith's ineffective assistance of counsel claim."), *cert. denied* __ U.S. __, 136 S. Ct. 337 (2015); *Zarvela v. Artuz*, 364 F.3d 415, 417 (2d Cir. 2004) (agreeing with the district court that the Appellate Division incorrectly decided a claim was procedurally defaulted, and ruling that the Appellate Decision's alternate decision that the claim was "in any event, without merit," constituted an adjudication on the merits entitled to AEDPA deference).  That

21

alternative decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must show that counsel's performance fell below an objective standard of professional reasonableness, and but for counsel's alleged errors, the result of the proceedings would have been different, and as a result, petitioner suffered prejudice. *Premo v. Moore*, 562 U.S. 115, 121-22 (2011); *Strickland*, 466 U.S. at 694. The standard "must be applied with scrupulous care" in habeas proceedings, because such a claim "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial] proceedings[.]" *Premo*, 562 U.S. at 122. "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and further citation omitted). A petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Even if petitioner can establish that counsel was deficient, he still must show that he suffered prejudice. *Id.* at 693-94.

Meeting this burden is "never an easy task . . . [and] establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Premo*, 562 U.S. at 122 (citations and internal quotation marks omitted). When evaluating an ineffective assistance claim under section 2254(d), "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but

whether that determination was unreasonable-a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation marks and citation omitted). Federal habeas courts "must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)" because "[w]hen §2254(d) applies, the question is not whether counsel's actions were reasonable." *Richter*, 562 U.S. at 105. Instead, "the question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard." *Id.*

"*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Richter*, 562 U.S. at 110 (quoting *Strickland*, 466 U.S. at 687) (internal quotation marks and citation omitted). The record in this case shows that Dulin was "reasonably prepared" for the suppression hearing. Dkt. No. 17-2 at TR 24-25. He reviewed police reports provided by the prosecutor, and enlisted an investigator to serve a subpoena on Mayo to testify at the hearing. *Id.* at TR 115-17, 125-26, 128-29. Dulin made appropriate objections, conducted voir dire of prosecution witnesses regarding proposed exhibits, and cross-examined the prosecutor's witnesses. *Id.* at TR 36-39, 40-43, 57-59, 80-101, 107-08, 114. Dulin secured an adjournment when the People rested in order to produce Mayo, and sought a second adjournment that was ultimately denied. *Id.* at TR 115-18, 132-33. "[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Richter*, 562 U.S. at 111.

Importantly, the record is not clear that Purrott or Dulin had the photographs. Dkt. No. 17-1 at SCR 218, 241-46. Even assuming arguendo that they did, and their performance was deficient for failure to investigate the origin of the photographs or to use them at the suppression hearing, petitioner cannot show prejudice. *Strickland*, 466 U.S. at 693-94.

Both attorneys likely recognized that the photographs did not negate probable cause, which simply requires "information sufficient to support a reasonable belief that an offense has been or is being committed by the suspect." *People v. Hicks*, 68 N.Y.2d 234, 238 (1986); *see Illinois v. Gates*, 462 U.S. 213, 232 (1983) (explaining that "probable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules."); *People v. Bigelow*, 66 N.Y.2d 417, 423 (1985) ("Probable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt[.]"). The photographs in question place petitioner near the scene of the shooting. They appear to show petitioner in the entrance of a store located on Second Avenue in Albany on June 18, 2010 at 22:48 p.m. (10:48 p.m.). According to the police reports, Mayo's shooting took place approximately four minutes later, at 22:52 p.m. (10:52 p.m.), at 22 Sloan Street, located between Cuyler Street and Second Avenue. Dkt. No. 17-1 at SCR 17, 19, 20, 21; *see* Dkt. No. 17-2 at TR 1283, 1306, 1701, 1703. Petitioner described the distance between the location of the store and the location of the shooting in his CPL §440.10 motion as "a couple of hundred yards" (Dkt. No. 17-1 at SCR 1149), but in his papers filed in this Court, petitioner states the distance was a "ten minute walk" (Dkt. No. 1-1 at 5) "hundreds of yards," and "about 1000 feet." (Dkt. No. 20 at 6, 7). Additionally, although petitioner claims that the assailants were waiting for Mayo, witnesses told police only one assailant was waiting, and the other assailant ran toward the victim from the direction of Second Avenue. Dkt. No. 17-1 at SCR 18, 21, 22-23, 25; Dkt. No. 17-2 at TR 1271, 1273.

Moreover, Mayo told police the shooter was "Sheem Stony," known to him from parole, and his brother drove a vehicle with a "Superman" sticker in the rear windshield. The

investigation revealed that the vehicle in question was registered to Shiere Goldston, and police developed a photo array, from which Mayo identified petitioner's photograph. Dkt. No. 17-1 at SCR 18, 22-23, 26. As the trial court found, and as Purrott and Dulin likely recognized, Mayo's identification of petitioner as the shooter gave police probable cause to arrest petitioner. Dkt. No. 17-1 at SCR 119; *see People v. Jones*, 2 N.Y.3d 235, 239 (2004) (explaining that police had "probable cause to believe that defendant was the perpetrator of the robberies based on the photographic identifications by the two victims."); *People v. Smith*, 12 A.D.3d 781, 782 (3d Dep't. 2004) (same); *Petrychenko v. Solovey*, 99 A.D.3d 777, 780 (2d Dep't. 2012) (stating that "[a]s a general rule, information from an identified citizen accusing another individual of the commission of a *specific* crime is sufficient to provide the police with probable cause to arrest.") (emphasis in original).

Based on the record, this Court cannot say that the state court's alternative decision rejecting petitioner's ineffective assistance claim was unreasonable or contrary to clearly established Supreme Court precedent. Ground One is therefore denied and dismissed.

## B.    Grounds Two and Three

In Ground Two of the petition, petitioner argues that his rights to due process and confrontation under the "6th Amendment" were violated because he was not permitted to call Mayo to testify at the suppression hearing. Pet. at 7. Petitioner argues that the trial court based its probable cause ruling on the fact that Mayo identified him as the shooter, and if he was able to question Mayo at the suppression hearing, he could have proved "the affidavit that was attached to the photo array was false and/or that the identification itself was suggestive. Dkt. No. 1-1 at 10. Petitioner also argues that his due process rights were violated because the court forced him to proceed to trial on the gun charges first, before he

had an opportunity to question Mayo. *See id.* at 10.

In Ground Three, petitioner claims that the "People and the Police used fraud and duress to secure the conviction." Pet. at 8. He claims that Mayo was "threatened and manipulated into giving perjured testimony so that the police could say that they had probable cause to arrest" him. *Id.*; Dkt. No. 20 at 15-17.

Petitioner raised both of these grounds in his CPL §440.10 motion. With respect to Ground Two, he argued that because Mayo did not testify at the suppression hearing or his gun possession trial, he "didn't have a chance to challenge the victim about the probable cause aspect of his case until after he had already been found guilty for possession of a weapon." Dkt. No. 17-1 at SCR 1136. He argued he was charged with the shooting as a "smokescreen to manufacture probable cause for finding the weapon," which he claimed was the fruit of an unlawful arrest that was not supported by probable cause. *See id.* at SCR 1136-37. Petitioner claimed that the People "sought to prevent" him from "facing his alleged accuser, and once" he was "found not guilty for the shooting case, they sought to bar" him from "bringing up issues from his second trial, even though these issues shed light on the probable cause issues of the first trial." *Id.* at SCR 1137. He attached to his motion an affidavit in which Shiere Goldston, petitioner's brother, stated Mayo told him he did not identify petitioner or sign paperwork for the police. *See* Dkt. No. 17-1 at SCR 1155.

With respect to Ground Three, petitioner argued that the Albany police knew Mayo could not identify him and therefore tried to force Mayo to "go along with their story, so that they could secure a conviction for the weapons possession charges." Dkt. No. 17-1 at SCR 1137. He repeated his argument that Mayo told Shiere Goldston he did not sign any documents, and he was being threatened with jail time if he did not cooperate. *See id.* at

26

SCR 1137-38.  He argued Mayo identified him at the shooting trial under threat of a perjury charge, and police knew petitioner was not at the scene of the shooting because of the store surveillance photographs.  *Id.* at SCR 1138-39.

The trial court rejected petitioner's claims pursuant to CPL §440.10(2), finding that the claims were "either raised or could have been raised on direct appeal[.]"  Dkt. No. 17-1 at SCR 1197.  The record confirms that Ground Two was, in fact, raised on direct appeal.  In his direct appeal brief, petitioner argued that a new suppression hearing should be ordered because the trial court improperly denied his request to call Mayo as a witness at the original hearing.  Dkt. No. 17-1 at SCR 316-18.  He claimed that Detective Haggerty's testimony was "sparse and incomplete as to how Mayo identified" petitioner, he had no opportunity to cross-examine Mayo at the gun possession trial, and there was no proof he or anyone on his behalf harassed Mayo.  *Id.* at SCR 316-17.  He also claimed that the trial court erred by denying his requests to reopen the suppression hearing after Mayo's testimony at the assault trial, arguing he could not identify petitioner and did so only under threat of a perjury charge, and his testimony was incredible.  *See id.* at SCR 317-18.

The Appellate Division rejected the claim:

> Where, as here, a defendant does not assert that the pretrial identification procedure was unduly suggestive, the decision to grant a defendant's request to call the complaining or identifying witness is a matter committed to the court's sound discretion (*see People v Taylor*, 80 NY2d 1, 15 [1992]; *People v Chipp*, 75 NY2d 327, 339 [1990], *cert denied* 498 US 833 [1990]; *People v White*, 79 AD3d 1460, 1461 [2010], *lv denied* 17 NY3d 803 [2011]). Based upon our review of defendant's offer of proof, we do not find that Supreme Court abused its discretion in denying defendant's request on this point. Moreover, "[a]ny improprieties in pretrial identification procedures can be investigated under the time-honored process of cross-examination" (*People v Chipp*, 75 NY2d at 338 [internal quotation marks and citation omitted]).

*Goldston*, 126 A.D.3d at 1178.[4]  Petitioner attached to his section 440 motion an affidavit from Shiere Goldston that was not presented to the Appellate Division, but the affidavit contains the same information presented to the trial court in support of petitioner's motions to re-open the suppression hearing and to call Mayo as a witness.  *Compare* Dkt. No. 17-1 at SCR 1155 *with* Dkt. No. 17-2 at TR 125-26, 128-29.  In other words, the affidavit does not add any new, off the record facts to petitioner's claim.  Because the claims in Ground Two were decided on direct appeal, the trial court's application on CPL §440.10(2) to bar this claim was not exorbitant.

Similarly, the claims in Ground Three of the petition were apparent on the face of the record.  At petitioner's trial on the shooting-related charges, Mayo initially testified he was not sure petitioner was the shooter.  Dkt. No. 17-2 at TR 1317-26.  After counsel was appointed to represent Mayo, he returned to the stand and testified consistently with statements to police and his grand jury testimony in which he identified petitioner.  *Id.* at 1334-45, 1385-91, 1424-65.  Based on Mayo's trial testimony, Becher moved to re-open the suppression hearing.  *Id.* at TR 1516-17.  Because the facts supporting Ground Three were apparent on the face of the record, the claim could have been raised on direct appeal, as trial court concluded when denying petitioner's CPL §440.10 motion.

Accordingly, the trial court's express invocation of CPL §440.10(2) to dispose of the claims in Grounds Two and Three of the petition bars federal habeas review unless petitioner shows cause for the default and actual resulting prejudice, or that the failure to review his claim would result in a fundamental miscarriage of justice.  *House v. Bell*, 547 U.S. 518,

---

[4]  In applying the standards for AEDPA review, federal habeas courts must generally review the "last reasoned decision" of the state court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).  In this case, the last reasoned decision was that of the trial court denying petitioner's CPL §440.10 motion.

536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Clark*, 510 F.3d at 393; *Holland*, 45 F. App'x. at 20-21; *Kimbrough*, 949 F. Supp. 2d at 359-60.  To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule.  *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman*, 501 U.S. at 753.  If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated.  *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Petitioner has not alleged, and the Court cannot discern, any grounds for cause to excuse the default.  *See* Pet.; Reply.  Therefore, the Court need not consider the issue of prejudice.  *Carrier*, 477 U.S. at 496; *Holland*, 45 F. App'x. at 21.  As previously noted, petitioner presents no new evidence that he is actually innocent of the gun charges.  *House*, 547 U.S. at 536-39.  Accordingly, petitioner's claims in Ground Two are procedurally defaulted and dismissed.[5]

---

[5]  Even if Grounds Two and Three were not defaulted, no relief would issue.  At bottom, petitioner's argument is that the police lacked probable cause to arrest him because Mayo's identification of petitioner as the shooter was defective and/or coerced and the gun should have been suppressed as fruit of an unlawful arrest.  *See* Pet., Reply.  Petitioner's claims fall under the Fourth Amendment.  In *Stone v. Powell*, 428 U.S. 465 (1976) the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494-95. Following *Stone*, review of Fourth Amendment claims in habeas petitions is permissible only: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). New York has a corrective procedure for Fourth Amendment violations, which is facially adequate. *See* CPL §710; *Capellan*, 975 F.2d at 70 n. 1.  Petitioner availed himself of that procedure by making a motion to suppress the gun.  The trial court denied the motion and petitioner appealed that denial.  Based on the record, there was no unconscionable breakdown in the underlying process.  Therefore, any direct challenge to the suppression ruling in this case is barred by *Stone*.

Petitioner argues for the first time in his reply that trial counsel was ineffective with respect to the claims

## IV.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition, Dkt. No. 1, is **DENIED and DISMISSED;** and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner

failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. §

2253(c)(2) requires;[6] and it is further

**ORDERED** that the Clerk serve copies of this Decision and Order upon the parties in

accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated:  July 17, 2017
        Syracuse, NY

Brenda K. Sannes
U.S. District Judge

---

in Ground Two and, therefore, his claims are not barred under *Kimmelman v. Morrison*, 477 U.S. 365 (1986). Reply at 10-11.  In *Kimmelman*, the Supreme Court held that ineffective assistance claims "founded primarily on incompetent representation with respect to a Fourth Amendment issue" are not barred under *Stone v. Powell*, 428 U.S. 465 (1976).  *Kimmelman*, 477 U.S. at 382-83. But petitioner did not challenge trial counsel's effectiveness in relation to Mayo's identification testimony in his petition, and arguments "may not be made for the first time in a reply brief." *Diaz v. United States*, 633 F. App'x. 551, 556 (2d Cir. 2015) (quoting *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)). This rule "applies with the same force to *pro se* litigants." *Id.* (citing *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996)); *see Jones v. Artus*, 615 F. Supp. 2d 77, 84-85 (S.D.N.Y. 2009) ("District courts have held that habeas claims raised for the first time in a reply memorandum or traverse are not properly considered.").  To the extent petitioner claims Mayo's identification was not reliable, citing *Neil v. Biggers*, 409 U.S. 188 (1972), this Court agrees with respondent that the argument is moot because he was acquitted of the shooting, and that trial contained the only presentation of identification evidence.  Finally, to the extent petitioner raises a Confrontation Clause argument, that claim fails.  The right to confront witnesses against him is a trial right that does not apply at suppression hearings, and Mayo's identification of petitioner was not presented at the suppression hearing for its truth, but instead to show police had probable cause to arrest him.  *Crawford v. Washington*, 541 U.S. 36, 59 n. 9 (2004); *Pennsylvania v. Ritchie*, 480 U.S. 39, 54 n.10 (1987); *McKelvey v. Bradt*, No. 1:13-CV-3527, 2016 WL 3681457 at *19 (S.D.N.Y. Jul. 6, 2016).

   [6]  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).